**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**


| | |
|---|---|
| **JEANNETTE RANTROPE BROWN et al.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 10-785** |
| **OPTION ONE MORTGAGES CORPORATION, et al.** | **SECTION "C" (1)** |


<u>**ORDER AND REASONS**[1]</u>


**I. Introduction**

      Before the Court is Defendants' Motion to Compel Arbitration and Stay Proceedings. (Rec. Doc. 30).   Upon review of the record, memoranda of counsel, and the applicable law, the Defendants' Motion to Compel Arbitration and Stay Proceedings is GRANTED.


**II. Background**

      The present dispute arose out of a  home loan agreement executed in February of 2003 between Jeanette Rantrope Brown and Option One Mortgage Corporation ("Option One"), for properties located on Elysian Fields Avenue and Urquhart Street in New Orleans, Louisiana. (Rec. Doc. 1 at 1; Rec. Doc. 30-2 at 1).  Plaintiffs seek relief based on alleged violations of the Fair Debt Collection Practices Act, and name Option One, American Home Mortgaging Servicing, Inc. ("AHMSI"), and Moss Codilis, LLP ("Moss Codilis") as Defendants. (Rec. Doc. 1 at 4-5).   In response, Sand Canyon Corporation, ("Sand Canyon"), AHMSI, and Moss Codilis filed a motion to stay court proceedings pending arbitration. (Rec. Doc. 30). Sand Canyon is Option One's

---

[1] Gillian Gurley, a third-year law student at Tulane University, assisted in the preparation of this document.

successor, AHSMI has acquired Option One's servicing portfolio, and Moss Codilis is stated to be AHSMI's agent. (Rec. Doc. 30-1 at 9). This Motion is founded on an arbitration agreement ("Arbitration Agreement") executed the same day as the mortgage loan. *Id*. at 1-2. The Arbitration Agreement provided that "any dispute, regardless of when it arose, shall be settled, at your option or ours, by arbitration in accordance with this Agreement." (Rec. Doc. 30-2 at 15).

The first of several disputes arose in 2006 over whether Ms. Brown had paid her property taxes, but was apparently settled between the parties without further incident. (Rec. Doc. 1 at 1, 4). Between May and August of 2009, AHMSI allegedly assessed fees to Plaintiffs for late checks and insufficient funds. *Id*. at 4. On February 10, 2010, Moss Codilis allegedly sent Plaintiffs a letter notifying Ms. Brown that she was in default of the loan and threatening foreclosure proceedings. *Id*. at 2. On March 5, 2010, Ms. Brown and her husband, Evans L. Brown, came to this Court seeking declaratory and injunctive relief against Option One, AHMSI, and Moss Codilis, which led Defendants to seek arbitration. *Id*.


**III. Law and Analysis**

In response to Defendants' Motion to Compel Arbitration and Stay Proceedings, Plaintiffs allege that at the time the Mortgage Agreement and Arbitration Agreement were signed, Ms. Brown suffered from Bipolar I Disorder and lacked the capacity to enter into those agreements. (Rec. Doc. 43 at 2). Plaintiffs also allege that the Arbitration Agreement should not be enforced because it is a contract of adhesion, and that arbitration of the dispute will not fully and fairly address their Complaint. *Id*. at 9, 13.

The Fifth Circuit has enumerated a two-step test to determine whether a district court should

2

compel arbitration.  "First, the court must determine whether the parties agreed to arbitrate the dispute.  Once the court finds that the parties agreed to arbitrate, it must consider whether any federal statute or policy renders the claims nonarbitrable."  *R.M. Perez & Assocs., Inc. v. Welch*, 960 F.2d 534, 538 (5th Cir. 1992).  Plaintiffs dispute the validity of the Agreement by alleging primarily that Ms. Brown did not possess the required capacity to make it.  (Rec. Doc. 43 at 2).

### i. The Federal Arbitration Act (FAA) and Challenging an Arbitration Agreement

The FAA applies to contracts involving interstate commerce that contain or are subject to a written agreement to arbitrate.  9 U.S.C. §§ 1-2.  The statute provides for "the enforcement of arbitration agreements within the full reach of the Commerce Clause," and reaches more transactions than those actually "within the flow of interstate commerce."  *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (internal quotations omitted).  Here, Plaintiffs are Louisiana citizens and Defendants are located in California and Colorado.  (Rec. Doc. 1 at 3; Rec. Doc. 30-1 at 4).  The contracts between them constitute interstate commerce under the FAA because the general practice of making home mortgage loans has a substantial effect on interstate commerce.  *Citizens Bank,* 539 U.S. at 57.  The Arbitration Agreement also satisfies the "agreement in writing" requirement of FAA Section 3, because there is no question it is in writing, and it was signed by Ms. Brown.  (Rec. Doc. 30-2).  Therefore, the terms of the FAA apply to this matter.

A court deciding a motion to stay litigation and compel arbitration has to determine first if the parties agreed to arbitrate the present dispute.  "A party cannot be compelled to submit a dispute to arbitration unless there has been a contractual agreement to do so."  *Neal v. Hardee's Food Systems, Inc.*, 918 F.2d 34, 37 (5th Cir. 1990) (internal citation omitted).  If there is a valid agreement to arbitrate, the next question is whether the dispute is "caught" by the scope of the

3

arbitration clause.  *See Brown v. Pacific Life Ins. Co.*, 462 F.3d 384, 396 (5th Cir. 2006).  In the absence of Plaintiffs' allegation that Ms. Brown lacked capacity when she signed the Arbitration Agreement, this would be a clear case for referring the parties to arbitration.  (Rec. Doc. 43). Because the Arbitration Agreement is broad, the underlying dispute about the servicing of her loan would fall within its scope.[2]  Plaintiffs' assertion, however, goes to the very formation of the Arbitration Agreement, so this Court must go beyond the Agreement itself to determine whether or not it was validly formed.

The question of the validity of an arbitration agreement is one for the court.  In *Primerica Life Insurance Co. v. Brown*, 304 F.3d 469 (5th Cir. 2002), the plaintiff signed a contract containing an arbitration clause, then claimed that he lacked the requisite capacity to execute the contract under Mississippi law.  *Id*. at 471.  Because the capacity defense implicated the contract generally, and was not a specific challenge to the arbitration clause itself, the question had to be submitted to the arbitrator.[3]  *Id*. at 472.  The court stated, "unless a defense relates specifically to the arbitration agreement, it must be submitted to the arbitrator as part of the underlying dispute." *Id*.  As Plaintiffs point out, *Primerica* is distinguishable from the case at bar, because here the arbitration agreement

---

[2] The Agreement provides: "if you and we are not able to resolve our differences informally, you and we agree that *any dispute*, regardless of when it arose, shall be settled, at your option or ours, by arbitration in accordance with this agreement."  (Rec. Doc. 30-2 at 15) (emphasis added).  "Any dispute" is defined as:

> [A]ny claim or controversy of any nature whatsoever arising out of or in any way related to the Loan; the arranging of the Loan; any application, inquiry or attempt to obtain the Loan; or any other aspect of the Loan transaction. It includes, but is not limited to, federal or state contract, tort, statutory, regulatory, common law and equitable claims.

*Id.*

[3] The doctrine of separability arises from *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395 (1967), in which the Supreme Court stated that the arbitration clause within a contract may be  separated out for purposes of determining the contract's validity. *Id*. at 403-04. If the question of validity goes to the "container" contract itself and not the arbitration clause, then arbitrators may decide the question. *Id.* If the arbitration clause itself is attacked, a court must decide its validity. *Id*. at 404.

is a separate agreement.  (Rec. Doc. 43 at 5).  Defendants do not contest that the Court must decide the question of the validity of the Arbitration Agreement.  (Rec. Doc. 46-2 at 2).  Therefore, before the Motion to Compel Arbitration may be entertained, this Court must decide the question of whether Ms. Brown had the capacity to enter into the Arbitration Agreement when she signed it in 2003.  *Webb v. Investacorp., Inc.*, 89 F.3d 252, 258 (5th Cir. 1996).

### ii. Did Ms. Brown Lack Capacity to Make the Arbitration Agreement?

Ms. Brown signed the Arbitration Agreement as a separate document in conjunction with the loan package.  (Rec. Doc. 30-2 at 15).  If Ms. Brown lacked capacity to enter into the Arbitration Agreement because she has Bipolar I Disorder, then its terms would be void and unenforceable.

To determine if the Arbitration Agreement is valid, the Court applies "ordinary state-law principles that govern the formation of contracts."  *Webb*, 89 F.3d at 258 (quoting *First Options of Chicago v. Kaplan*, 514 U.S. 938, 944 (1995)).  There is no dispute between the parties that Louisiana law applies to this inquiry.  (Rec. Doc. 43 at 8; Rec. Doc. 46-2 at 3).  In Louisiana, a contract is an agreement by two or more parties in which obligations are created, modified, or extinguished.  La. Civ. Code art. 1906.  Four elements are necessary for the formation of a valid contract: the parties must have the capacity to contract; they must freely give their mutual consent; there must be a certain lawful object for the contract; and there must be lawful cause.  La. Civ. Code arts. 1918, 1927, 1971, 1966.

Though Plaintiffs' assertions go to the heart of the question of validity, they must overcome several hurdles to succeed.  "In the absence of a special exception, a presumption arises that all persons possess the capacity to contract.  The exceptions to the presumption of capacity must be shown quite convincingly and by the great weight of the evidence."  *Higgins v. Spencer*, 531 So.2d

768, 770 (La. App. 1 Cir. 2/28/88), *writ denied*, 532 So. 2d 106 (La. 1988).  These exceptions apply to unemancipated minors, interdicts, and persons deprived of reason at the time of contracting.  La. Civ. Code art. 1918.  Plaintiffs allege that at the time the Arbitration Agreement was signed, Ms. Brown fell into the last category.  (Rec. Doc. 43 at 2).

As evidence of Ms. Brown's alleged incapacity, Plaintiffs provided two notes from the office of Dr. Dennis A. O'Brien.  (Rec. Doc. 44-1 at 9-10).  According to these submissions, Ms. Brown has been treated by Dr. O'Brien for Bipolar I Disorder since 2005.  *Id.*  Even if this Court accepts these documents and Plaintiffs' allegations as true, they do not rise to the level of "show[ing] quite convincingly and by the great weight of the evidence" that Ms. Brown was incapacitated at the time the agreements were executed.  *Higgins*, 531 So.2d at 770.  In fact, the evidence Plaintiffs provide states that Ms. Brown's treatment began in 2005, two years after the mortgage and Arbitration Agreement were executed. (Rec. Doc. 44-1 at 9).

Further, Civil Code Article 1925 provides, that "[a] noninterdicted person, who was deprived of reason at the time of contracting, may obtain rescission of an onerous contract upon the ground of incapacity *only* upon showing that the other party knew or should have known that person's incapacity."  La. Civ. Code art. 1925 (emphasis added).  Comment (b) to that article indicates the difficult task Ms. Brown has in meeting the required standard: "[p]roof that the alleged incapable was 'notoriously insane' at the time of contracting raises a rebuttable presumption" that the plaintiff was deprived of reason at the time of contracting.  *Id.*  Plaintiffs have not put forth any evidence indicating Ms. Brown was "notoriously insane" at the time of contracting, nor  is there any evidence that Option One or its agents knew or should have known that she suffered from Bipolar I Disorder and lacked capacity at the time.  *Id.*

Finally, it was not until Defendants moved to compel arbitration according to the Agreement that Plaintiffs alleged Ms. Brown's incapacity to contract at all.  (Rec. Doc. 43).  In Plaintiffs' original Complaint, no mention was made of incapacity, nor was it alleged that the agreements of February 2003 were defective in any manner. (Rec. Doc. 1).  In Plaintiffs' Opposition to Defendants' Motion to Stay, only the Arbitration Agreement is attacked on the grounds of lack of capacity, despite the fact that other contracts with Defendants were signed the same day.  (Rec. Doc. 30-2).  Even taking Plaintiffs' evidence as true, the Court finds it does not suffice to show that Ms. Brown was incapacitated at the time of forming the Agreement to Arbitrate or that Defendants knew or should have known of the incapacity.

### iii. Is the Arbitration Agreement Unconscionable?

Plaintiffs also argue that the Arbitration Agreement is one of adhesion and is unconscionable because of the unequal bargaining positions of the parties.  (Rec. Doc. 43 at 8-10).  "[A] contract of adhesion is a standard contract, usually in printed form, prepared by a party of superior bargaining power for adherence or rejection of the weaker party." *Aguillard v. Auction Management Corp.*, 908 So.2d 1, 8-9 (La. 2005) (quoting *Golz v. Children's Bureau of New Orleans*, 326 So. 2d 865, 869 (La. 1976).

> [A] contract is one of adhesion when either its form, print, or unequal terms call into question the consent of the non-drafting party and it is demonstrated that the contract is unenforceable, due to lack of consent or error, which vitiates consent. Accordingly, even if a contract is standard in form and printed in small font, if it does not call into question the non-drafting party's consent and if it is not demonstrated that the non-drafting party did not consent or his consent is vitiated by error, the contract is not a contract of adhesion.

*Id*. at 10-11.

The central issue  in an adhesion analysis is whether a party truly consented to all of the

terms printed in the contract. *Id*. at 11.  As was noted, the document is separate from the Mortgage Agreement and other documents related to the loan.  (Rec. Doc. 30-2).  The Agreement is labeled in bold, capital letters, "AGREEMENT FOR THE ARBITRATION OF DISPUTES: THIS CONTRACT CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES."  (Rec. Doc. 30-2 at 15).  The same language appears above the signature block contained in the contract.  *Id*. at 16.  Accordingly, this Court finds that the Agreement to Arbitrate is not a contract of adhesion because it does not "call into question the non-drafting party's consent." *Aguillard*, 908 So.2d at 11.  The Agreement's nature and terms are clear and Ms. Brown agreed to its content by affixing her signature to the document.

Plaintiffs also argue that the terms of the Arbitration Agreement are one-sided and bind only Ms. Brown to arbitration; they quote a portion of the document which purportedly states, "you agree that you will arbitrate," without corresponding language binding the Defendants.  (Rec. Doc. 43 at 9).  Upon a careful reading of the Arbitration Agreement, however, the Court does not find it to be one-sided.  It provides, "you and we agree that any dispute...shall be settled, at your option or ours, by arbitration in accordance with this Agreement."  (Rec. Doc. 30-2 at 15).  Later it states, "[e]ither you or we can request that a dispute be submitted to arbitration."  *Id*.  Though Option One is the more sophisticated business entity and had arguably greater bargaining power than Jeannette Brown, the Arbitration Agreement shows no signs of unconscionability.  In fact, the separate Agreement seems drafted specifically to dispel questions of unconscionability. The Court finds that the Arbitration Agreement was neither adhesionary nor unconscionable.

### iv. Will an Arbitrator Fairly and Properly Address the Plaintiff's Complaints?

It is well-settled that there is a strong federal policy favoring arbitration, exemplified by the

requirements of the FAA.  Where a valid agreement to arbitrate exists, a court faced with a motion to compel arbitration must do so, and must stay all proceedings before it while the parties resolve their disputes  in the agreed arbitral forum.  9 U.S.C. § 3.  Implicit in this federal structure is the belief that where parties have so agreed, the arbitral forum is as satisfactory as a court for the resolution of their disputes.  The American Arbitration Association, the organization to whom the present parties agreed to submit their disputes, is a long-established and well-respected arbitral institution.

As mentioned in III(i), Plaintiffs' Complaint falls squarely within the scope of the Arbitration Agreement, and the Court finds no colorable reason the arbitrator would be unable to address its merits.  Though limited, the FAA allows for judicial review of an arbitral award once it has been made.  If Plaintiffs' claims are not properly addressed in arbitration, or there is some misconduct on the part of the arbitrator, Plaintiffs are protected by Section 10 of the FAA and may seek to have the award vacated.  By the same token, either party may move to confirm the arbitral award pursuant to Section 9.  This Court finds that the arbitral forum is capable of addressing the claims that Plaintiffs submitted to this Court.  Having found that a valid agreement to arbitrate exists, and that there is no federal policy that would prevent the arbitration of the Plaintiffs' claims, the Court must stay all proceedings before it and compel the parties to submit their dispute to arbitration.

**IV. Conclusion**

For the foregoing reasons,

IT IS ORDERED that Defendants' Motion to Compel Arbitration and Stay Proceedings is GRANTED.

IT IS FURTHER ORDERED that all proceedings in this matter shall be stayed pending the outcome of the parties' arbitration.

IT IS FURTHER ORDERED that the Clerk of Court mark this action closed for statistical purposes.  The Court shall retain jurisdiction and the case shall be restored to the trial docket upon motion of a party if circumstances change, so that it may proceed to final disposition.  This order shall not prejudice the rights of the parties to this litigation.

New Orleans, Louisiana, this 18th day of November 2010.


**HELEN G. BERRIGAN**
**UNITED STATES DISTRICT JUDGE**