UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JEANNETTE RANTROPE BROWN and EVANS L. BROWN, JR. | CIVIL ACTION |
| VERSUS | NO: 10-785 |
| OPTION ONE MORTGAGES, CORPORATION, ET AL | SECTION: "C" (1) |

## ORDER & REASONS

Before the Court are pro se Plaintiffs' five motions: (1) Motion to Lift Stay Proceedings ("Motion to Lift Stay"); (2) Motion for Declaratory and Injunctive Relief Ordering the Return of Lender Placed Insurance Settlement Funds ("Motion for Declaratory Relief"); (3) Motion for Sanctions and Property Deed; (4) Motion to Deny for any Court Order Requesting the Reopening of the American Arbitration File by AHMSI ("Motion to Deny"), and (5) Motion for Summary Judgment. (Rec. Docs. 94, 68, 69, 76, 89). Based on the memoranda of counsel, the record, and the law, the Court GRANTS Plaintiffs' Motion to Lift Stay; DENIES Plaintiffs' Motion for Declaratory Relief; DENIES Plaintiffs' Motion for Sanctions and Property Deed; DENIES Plaintiffs' Motion to Deny; and DENIES Plaintiffs' Motion for Summary Judgment.

This case arose out of a home loan agreement executed in February 2003 between Jeanette Rantrope Brown ("Ms. Brown") and Option One Mortgage Company ("Option One"), for properties located on Elysian Fields Avenue and Urquhart Street in New Orleans, Louisiana.

(Rec. Doc. 1 at 1; Rec. Doc. 30-2 at 1).  In their Complaint, Plaintiffs allege that between May and August 2009, American Home Mortgage Servicing, Inc. ("AHMSI") assessed fees to Plaintiffs for late checks and insufficient funds.  (Rec. Doc. 1 at 4).  They claim that Moss Codilis, LLP ("Moss Codilis") sent them a letter notifying Ms. Brown that she was in default of the loan and threatening foreclosure.  (Rec. Doc. 1 at 2).  On March 5, 2010, they filed suit against Option One (now named Sand Canyon Corporation ("Sand Canyon")), AHMSI, and Moss Codilis (collectively, "Defendants") for alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), namely actions "relative to false and/or misleading representation underlying the debt" and actions "against mental health, pain and suffering."  (Rec. Doc. 1 at 4-5).

On November 18, 2010, the Court granted Defendants' Motion to Compel Arbitration and Stay Proceedings, staying the matter pending the outcome of arbitration, and ordering the case administratively closed, to be reopened upon motion if circumstances changed.  (Rec. Doc. 62).  Since then, pro se Plaintiffs have filed a total of seven motions before this Court, even though it appears to the Court, and the parties agree, that no arbitration proceedings have taken place.  (Rec. Docs. 63, 68, 69, 76, 79, 89, 94).  Plaintiffs' Motion to Set Guidelines for Arbitration and Clarification was denied and the Court advised Plaintiffs to submit their request to the American Arbitration Association ("AAA").  (Rec. Docs. 63, 67).  Plaintiffs' Motion to Place Defendants in Contempt of Court for Defendants' failure to oppose a motion was dismissed as moot because it arose from Plaintiffs' misunderstanding of the Court's Order granting Defendants' Motion to Expedite Consideration of Motion to Continue the hearing date of two of Plaintiffs' seven Motions.  (Rec. Docs. 79, 83, 73).  Plaintiffs' five remaining Motions

are disposed of by this Order.

### I. Motion to Lift Stay (Rec. Doc. 94).

In their Motion to Lift Stay, Plaintiffs argue that Defendants waived their right to have Plaintiffs' claims determined in an arbitration proceeding when Defendants substituted arbitration with a conference call on March 2011. (Rec. Doc. 94 at 1). Plaintiffs also suggest that Defendants waived their right to arbitration because they did not timely comply with the AAA's request for fees for commencing arbitration. (Rec. Doc. 94-1 at 5).

Defendants' initial response to Plaintiffs' contention that Defendants had waived their right to arbitration was that Defendants' failure to timely pay the requisite fees was a mere procedural error, not a waiver, and that the error had occurred in part because Plaintiffs served the arbitration complaint on Defendants themselves instead of Defendants' counsel. (Rec. Doc. 81, 82). In their Response to the instant Motion, however, Defendants consent to Plaintiffs' requested relief, asking that the stay be lifted and that this matter be set for trial. (Rec. Doc. 95). Plaintiffs then filed Motion to File Leave of Court in Opposition to Defendants' Request to Set Matter for Trial, which the Court liberally construes as a reply memorandum regarding Plaintiffs' Motion to Lift Stay. (Rec. Doc. 98). In it, Plaintiffs request that this case not be set for trial. (Rec. Doc. 98). However, setting the matter for trial is a direct consequence of the relief Plaintiffs seek in their Motion.

Regardless of the reason for Plaintiffs' misunderstanding, their request in the Reply is moot, because the Court grants their Motion to Lift Stay. Federal policy strongly favors arbitration of disputes. *See, e.g., Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217-218 (1985); *Safer v. Nelson Fin. Group Inc.*, 422 F.3d 289, 294 (5th Cir. 2005). Furthermore, there

is a strong presumption against waiver of arbitration, and establishing waiver requires a "heavy burden" of proof. *See, e.g., Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 326 (5th Cir. 1999). However, a party is free to waive its right to arbitration: "[a] party waives his right to arbitrate when he actively participates in a lawsuit or takes other action inconsistent with that right." *Miller Brewing Co. v. Fort Worth Distributing Co.*, 781 F.2d 494, 497 (5th Cir. 1986) (citation omitted). *See also E.C. Ernst, Inc. v. Manhattan Const. Co.*, 559 F.2d 268, 269 (5th Cir. 1977) ("When one party reveals a disinclination to resort to arbitration on any phase of suit involving all parties, those parties are prejudiced by being forced to bear the expenses of a trial . . . . Substantially invoking the litigation machinery qualifies as the kind of prejudice . . . that is the essence of a waiver.").

Defendants' consent to lift the stay of proceedings and engage in litigation is inconsistent with their right to arbitrate and thus constitutes a clear waiver of that right. (Rec. Doc. 95 at 1). The Agreement for the Arbitration of Disputes ("Arbitration Agreement") between Ms. Brown and Defendants provides: "if you and we are not able to resolve our differences informally, you and we agree that any dispute, regardless of when it arose, shall be settled, *at your option or ours*, by arbitration in accordance with this agreement." (Rec. Doc. 30-2 at 15) (emphasis added). In this case, Defendants exercised this option in their Motion to Compel Arbitration, and the Court granted that Motion. (Rec. Doc. 30, 62). The record does not indicate that arbitration has taken place, and the parties confirm as much in various submissions to the Court. (Rec. Doc. 81 at 4; Rec. Doc. 97-2 at 5). Defendants now seek not to exercise the arbitration option. It would make little sense to force the parties to arbitrate, when arbitration is an option in their contract and neither party seeks to exercise it.

The Court's Order compelling arbitration ordered the proceedings in this matter stayed pending the outcome of the parties' arbitration, and closed the matter for statistical purposes, stating that "the Court shall retain jurisdiction and the case shall be restored to the trial docket upon motion of a party if circumstances change, so that it may proceed to final disposition." (Rec. Doc. 62 at 10).  Given that no arbitration has taken place and that neither party wishes to proceed with arbitration, the stay is lifted and the case is reopened and will be set for trial.

**II. Motion for Declaratory Relief (Rec. Doc. 68).**

In their Motion for Declaratory Relief, Plaintiffs allege that AHMSI cashed the insurance proceeds that Ms. Brown was entitled to pursuant to the indemnification agreement she made with her insurer for damages caused by Hurricane Gustav on September 1, 2008 or thereafter. (Rec. Doc. 68 at 2; Rec. Doc. 68-2 at 4).  According to the indemnification agreement, the proceeds were divided into two checks, one for $7,500, and one for $10,000.  (Rec. Doc. 68-2 at 4).  Plaintiffs further allege that AHMSI applied those proceeds to Ms. Brown's mortgage.  (Rec. Doc. 68 at 2).

Defendants argue that AHMSI did not cash and apply the proceeds to Ms. Brown's mortgage.  (Rec. Doc. 80 at 2).  They allege that the $7,500 check "became stale," according to AHMSI records, and that the $10,000 check was cashed without AHMSI's endorsement and is currently under fraud investigation.  (Rec. Doc. 80 at 2).  Defendants add that even if AHMSI had cashed and applied the checks to Ms. Brown's mortgage, it would be in its right, because the Mortgage Agreement it signed with Ms. Brown expressly permits it, as lender, to apply insurance proceeds to the sums secured by the Mortgage Agreement, whether or not then due. (Rec. Doc. 80 at 2).

5

Plaintiffs have put forth no evidence that the insurance proceeds are in AHMSI's possession. Furthermore, the Mortgage Agreement clearly provides that AHMSI would be allowed to apply those proceeds to Ms. Brown's mortgage payments:

> Unless the Lender and Borrower otherwise agree in writing, or applicable Law otherwise requires, insurance proceeds shall be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining any such insurance proceeds, and then, at Lender's option, in such order and proportion as Lender may determine in its sole and absolute discretion, and regardless of any impairment of security or lack thereof: (i) *to the sums secured by this Security Instrument, whether or not then due*, and to such components thereof as Lender may determine in its sole and absolute discretion; and/or (ii) to Borrower to pay the costs and expenses of necessary repairs or restoration of the Property to a condition satisfactory to Lender.

(Rec. Doc. 80-1 at 4) (emphasis added). Thus, even if AHMSI had cashed and applied the insurance proceeds to Ms. Brown's mortgage payments, it would have been in its right pursuant to the Mortgage Agreement. Finally, the Court notes that the relief Plaintiffs demand in this Motion is not related to the single cause of action in their Complaint, that is, violation of the FDCPA. Accordingly, relief is not proper and the Motion is denied.

### III. Motion for Sanctions and Property Deed (Rec. Doc. 69).

In their Motion for Sanctions and Property Deed, Plaintiffs first argue that Defendants waived their right to arbitration for the same reasons as those in their Motion to Lift Stay. (Rec. Doc. 69 at 1). This argument is moot because the Court is granting Plaintiffs' Motion to Lift Stay on the ground that Defendants since waived their right to arbitration by consenting to Plaintiffs' Motion to Lift Stay.

Plaintiffs next argue that the Court should sanction Defendants for failing to pay fees to the AAA and thus delaying the commencement of arbitration proceedings. In response, Defendants argue that their failure to pay a fee was a mere procedural error, not one for which

sanctions may be imposed. (Rec. Doc. 81 at 6). To impose sanctions for conduct that offends the judicial process, the Court must find that the party acted in bad faith. *See Chambers v. NASCO*, 501 U.S. 32, 49-50 (1991). Plaintiffs do not allege that Defendants' failure to timely pay the arbitration proceeding fees was in bad faith, and there is no evidence in the record that this was the case. Thus, Defendants' conduct is not sanctionable.

Finally, Plaintiffs argue that AHMSI must turn over the "original deed of trust," which the Court interprets as the original negotiable instrument and mortgage. (Rec. Doc. 69 at 16). Defendants counter that this request is unreasonable because this action is not a foreclosure action in which the original note and security instrument must be made part of the record. Indeed, Plaintiffs' Complaint contains no cause of action relating to foreclosure; Plaintiffs merely ask that this Court enjoin Defendants from instituting foreclosure proceedings as a *remedy* for Plaintiffs' FDCPA claims. Therefore, Plaintiffs' request for the original note and mortgage is inappropriate. Accordingly, Plaintiffs' Motion for Sanctions and Property Deed is denied.

### IV. Motion to Deny (Rec. Doc. 76).

Plaintiffs' Motion to Deny raises identical issues to those in their Motion for Sanctions and Property Deed. Thus, the Motion is denied for the same reasons.

### V. Motion for Summary Judgment (Rec. Doc. 89).

Plaintiffs seek summary judgment for the following claims: (1) whether AHMSI must produce the deed of trust and promissory note related to Ms. Brown's mortgage; (2) whether the Arbitration Agreement is valid; (3) whether Defendants waived their right to arbitration; (4) whether AHMSI possesses and/or cashed and applied the insurance proceeds from Ms. Brown's

indemnification agreement with her insurer, and whether those funds should be returned to Ms. Brown; (5) whether Plaintiffs were overcharged through an escrow account; (6) whether Defendants violated the FDCPA; (7) whether Defendants violated Louisiana insurance law; (8) whether Defendants improperly applied payments by Ms. Brown; (9) whether Defendants violated federal mortgage transaction, foreclosure, and consumer reporting laws; (10) whether Defendants were negligent; and (11) whether Plaintiffs are entitled to damages of $80,000. (Rec. Doc. 89 at 4-13).

The arguments for claim (1) are moot, as that claim is disposed of through the Court's resolution of Plaintiffs' Motion for Sanctions and Property Deed (Rec. Doc. 69). Arguments for claim (2) are mooted by this Court's November 18, 2010 Order. (Rec. Doc. 62). Arguments for claim (3) are mooted by this Court's disposition of Plaintiffs' Motion to Lift Stay. (Rec. Doc. 94). And arguments for claim (4) are mooted by the Court's resolution of Plaintiffs' Motion for Declaratory Relief. (Rec. Doc. 68). In addition, claims (5), (7), (8), (9), and (10) are dismissed because they are unrelated to the single cause of action in Plaintiffs' Complaint, that is, violation of the FDCPA. Accordingly, the sole claims for which summary could be granted are (6) whether Defendants violated the FDCPA and (11) whether Plaintiffs are entitled to money damages for violations of the FDCPA.

Summary judgment is proper only when the record indicates that there is not a "genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A genuine issue of fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986); *see also Taita Chem. Co. v. Westlake Styrene Corp.*, 246 F.3d 377, 385 (5th Cir.

2001). When considering a motion for summary judgment, this Court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto Ins. Co.,* 784 F.2d 577, 578 (5th Cir. 1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its initial burden, however, "the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995). In order to satisfy its burden, the non-moving party must put forth competent evidence and cannot rely on "unsubstantiated assertions" and "conclusory allegations." *See Hopper v. Frank*, 16 F.3d 92 (5th Cir. 1994); *Lujan v. Nat'l. Wildlife Fed'n.*, 497 U.S. 871, 871-73 (1990); *Donaghey v. Ocean Drilling & Exploration Co.,* 974 F.2d 646, 649 (5th Cir. 1992).

Plaintiffs have produced no evidence at all that Defendants violated the FDCPA or that they are entitled to money damages pursuant to such alleged violations under the FDCPA. Accordingly, they have not met their burden of making a prima facie case that there is no genuine issue of material fact regarding these two claims. Thus, genuine issues of fact exist, and summary judgment is inappropriate.

Accordingly,

IT IS ORDERED that Plaintiffs' Motion to Lift Stay Proceedings is GRANTED. (Rec. Doc. 94).

IT IS FURTHER ORDERED that this action, previously closed for statistical purposes pursuant to the Court's November 18, 2010 Order, is hereby REOPENED.

IT IS FURTHER ORDERED that this action be SET for trial at a telephone scheduling conference to be held on January 26, 2012, at 10:00 a.m. The Court will initiate the conference.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Declaratory and Injunctive Relief Ordering the Return of Lender Placed Insurance Settlement Funds is DENIED. (Rec. Doc. 68).

IT IS FURTHER ORDERED that Plaintiffs' Motion for Sanctions and Property Deed is DENIED. (Rec. Doc. 69).

IT IS FURTHER ORDERED that Plaintiffs' Motion to Deny for any Court Order Requesting the Reopening of the American Arbitration File by AHMSI is DENIED. (Rec. Doc. 76).

IT IS FURTHER ORDERED that Plaintiffs' Motion for Summary Judgment is DENIED. (Rec. Doc. 89).

New Orleans, Louisiana, this 11th day of January, 2012.

                                              **HELEN G. BERRIGAN**
                                              **UNITED STATES DISTRICT JUDGE**